# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 14, 2012

## STATE OF TENNESSEE v. CHRISTOPHER SETH HALEY

**Appeal from the Criminal Court for Sumner County**
**Nos. 199-2008, 450-2008, 439-2010     Dee David Gay, Judge**

**No. M2011-00085-CCA-R3-CD - Filed September 27, 2012**

On March 6, 2008, the Defendant-Appellant, Christopher Seth Haley, was indicted in case number 199-2008 for violating the Motor Vehicle Habitual Offender's Act (MVHOA), evading arrest, possession of a Schedule II controlled substance, possession of drug paraphernalia, and conviction of two or more prior offenses of simple possession or casual exchange of a controlled substance that could be used to enhance his punishment for the third offense of simple possession of a controlled substance pursuant to Tennessee Code Annotated section 39-17-418(e). On June 6, 2008, Haley was indicted in case number 450-2008 for possession of .5 grams or more of a Schedule II drug with the intent to sell or deliver. On March 30, 2009, he entered guilty pleas in case number 199-2008 to the offenses of violating the MVHOA and evading arrest, Class E felonies, and in case number 450-2008 to the offense of possession of .5 grams or more of a Schedule II drug with the intent to sell or deliver, a Class B felony, and the State entered a nolle prosequi for the remaining charges in case number 199-2008. On June 10, 2010, Haley was indicted in case number 439-2010 for felony escape and two counts of felony failure to appear. On September 30, 2010, Haley entered a guilty plea in case number 439-2010 to one count of failure to appear, a Class E felony, and the State entered a nolle prosequi for the remaining counts in that case number. On December 10, 2010, the trial court sentenced Haley as a Range I, standard offender to concurrent sentences of two years for violating the MVHOA conviction, two years for the evading arrest conviction, and ten years for the possession of .5 grams or more of a Schedule II drug with the intent to sell or deliver conviction. The court also sentenced Haley as a Range II, multiple offender to a consecutive sentence of four years for the felony failure to appear conviction, for an effective sentence of fourteen years in the Tennessee Department of Correction. On appeal, Haley contends that the trial court erred in failing to consider any mitigating factors before imposing his sentence and erred in denying him an alternative sentence. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JOHN EVERETT WILLIAMS, J, joined.

Jason B. Elliott (on appeal) and Lawren B. Lassiter (at trial), Gallatin, Tennessee, for the Defendant-Appellant, Christopher Seth Haley.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy E. Wilber, Assistant Attorney General; Lawrence R. Whitley, District Attorney General; and Jayson C. Criddle, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Plea Submission Hearing.** At the September 30, 2010 plea submission hearing, the State informed the trial court that Haley had been charged with one count of escape and two counts of felony failure to appear in case number 439-2010 and was entering a guilty plea as a Range II, multiple offender to one count of felony failure to appear, with the length and manner of the service of the sentence to be determined by the court. The State entered a nolle prosequi for the remaining counts in case number 439-2010. The State also told the court that the sentence for the felony failure to appear conviction would be served consecutively to Haley's sentences for violating the MVHOA and evading arrest in case number 199-2008 and possession of .5 grams or more of a Schedule II drug with the intent to sell or deliver in case number 450-2008, to which Haley had previously entered guilty pleas in exchange for an effective sentence of ten years and a sentencing hearing that was delayed for one year.

The State explained that Haley also failed to appear for his March 25, 2010 sentencing hearing for the convictions in case numbers 199-2008 and 450-2008, which provided the basis for the two felony failure to appear charges. After being informed of his rights, Haley entered a guilty plea as a Range II, multiple offender to one count of felony failure to appear.

We initially note that although Haley included the plea submission hearing transcript for the felony failure to appear offense, he did not include the plea submission hearing transcript for the offenses of violating the MVHOA, evading arrest, and possession of .5 grams or more of a Schedule II drug with the intent to sell or deliver. However, we are able to determine the facts regarding these offenses from the indictments, the plea submission hearing transcript for the felony failure to appear offense, the guilty plea documents, the sentencing hearing transcript for all four offenses, the presentence investigation report, and the judgments. In particular, the State's detailed summary of the facts regarding the offenses, which was undisputed by Haley, and Haley's own testimony regarding the offenses at the sentencing hearing provide us with sufficient information upon which to evaluate the

propriety of his sentences. Accordingly, we will review the issues in this appeal on their merits. See State v. Anna M. Steward, No. E2010-01918-CCA-R3-CD, 2011 WL 4346659, at *2 (Tenn. Crim. App., at Knoxville, Sept. 19, 2011) ("Despite the absence in the appellate record of a transcript of the plea submission hearing, we hold that the record is adequate for this court's de novo review[.]"); see also State v. Jeffrey O. Short, No. E2011-01417-CCA-R3-CD, 2012 WL 2877631, at *3 (Tenn. Crim. App., at Knoxville, July 16, 2012); State v. Edward L. Baird, No. E2011-01763-CCA-R3-CD, 2012 WL 1867275, at *4 (Tenn. Crim. App., at Knoxville, May 23, 2012); State v. Leroy Dowdy, No. M2011-00939-CCA-R3-CD, 2012 WL 1808866, at *4 (Tenn. Crim. App., at Nashville, May 17, 2012).

**Sentencing Hearing.** At the December 10, 2010 sentencing hearing, the trial court determined the proper sentences for the convictions for violating the MVHOA, evading arrest, possession of .5 grams or more of a Schedule II drug with the intent to sell or deliver, and failure to appear. The State reminded the court that Haley would be sentenced as a Range I, standard offender for the first three convictions, which were to be served concurrently, and would be sentenced as a Range II, multiple offender for the failure to appear conviction, which would be served consecutively to the other three convictions.

The State explained that the first three charges stemmed from Haley's refusal to stop his vehicle for a police officer regarding a seat belt violation on December 14, 2007. When the officer turned on his emergency lights, Haley did not stop his vehicle until he reached his place of employment, which was a "pretty substantial distance" away. When Haley finally brought his car to a stop, the officer determined that Haley was driving in violation of the MVHOA. After searching Haley's vehicle, the officer found a small amount of cocaine. In addition, Haley had "baggies and scales [in his vehicle] and admitted to the officer that he [sold] cocaine[.]" Later, jail personnel found fourteen grams of cocaine on Haley's person. As a result of the December 14, 2007 incident, Haley was charged with violating the MVHOA, evading arrest, possession of a Schedule II drug, possession of drug paraphernalia, and possession of .5 grams or more of a Schedule II drug with the intent to sell or deliver.

While Haley was released on bond for the aforementioned charges, he was also charged in Davidson County with two sets of violating the MVHOA and driving under the influence (DUI), which represented his fifth and sixth arrests for DUI. During one of the incidents in Davidson County, Haley was also charged with leaving the scene of an accident, evading arrest, and theft of an automobile valued at $10,000 or more but less than $60,000. Pursuant to his Davidson County plea agreement, one set of these charges was dismissed and Haley entered a guilty plea to DUI, fourth offense, a Class E felony, and theft of property valued at $10,000 or more but less than $60,000, a Class C felony.

Because of the Davidson County offenses, the State filed a motion to increase Haley's bond with regard to his Sumner County offenses. While that motion was pending, Haley entered guilty pleas to violating the MVHOA, evading arrest, and possession of .5 grams or more of a Schedule II drug with the intent to sell or deliver. The State agreed to delay Haley's sentencing hearing on these offenses for one year so that Haley could enter a long-term rehabilitation program known as New Hope Restoration House (New Hope) pursuant to the trial court's furlough order. After receiving treatment at New Hope for several months, Haley was granted a weekend pass, during which he was arrested for public intoxication and evading arrest on foot in Knoxville. As a result of these charges, Haley was expelled from the rehabilitative program. Following his expulsion from New Hope, Haley called his attorney and the district attorney's office and asked for permission to enter a different rehabilitation program. The assistant district attorney assigned to his case informed Haley on two or three different occasions that because he was represented by counsel, he could not speak with him other than to tell him that he could not give him permission to go to another rehabilitation program, that he was under a duty to turn himself into the authorities, and that he would have to ask the trial court for permission to enter a new rehabilitation program. The assistant district attorney immediately called Haley's attorney to inform him that he had been contacted by Haley.

Haley's expulsion from New Hope violated the Sumner County Criminal Court's initial furlough order. As a result, Haley was indicted for felony escape. In addition, Haley was indicted for two counts of failure to appear because he missed his September 25, 2010 sentencing hearing for the offenses in case numbers 199-2008 and 450-2008 to which he had previously plead guilty. At the time of the September 25, 2010 sentencing hearing, Haley had already been convicted of the charges in Davidson County, which made him a Range II, multiple offender. Despite repeated instructions from defense counsel and the district attorney's office, Haley never turned himself into the authorities. He was subsequently arrested on March 30, 2010, and remained in incarceration until his December 10, 2010 sentencing hearing. Pursuant to the plea agreement, Haley was to receive no jail credit for the time he spent at New Hope or the time that he spent on escape status.

At the December 10, 2010 sentencing hearing, letters from Pastor Jeremy Graham, Matthew Johnson, and Connie Shaffer were entered into evidence. The letter from Graham, the executive director of the True Purpose Recovery Center, stated that he had been Haley's mentor at New Hope. Graham said that Haley had responded positively to the rehabilitaiton program but that Graham's departure from the program may "have affected" Haley. Graham asked that Haley be given another chance at recovery by receiving treatment at the True Purpose Recovery Center, a nine-and-a-half month rehabilitation program. The letter from Matthew Johnson, the program director at True Purpose Recovery Center, stated that he had met Haley when he counseled him at New Hope. Johnson said that he believed that Haley

-4-

was beginning to reach his full potential through counseling at New Hope and had become an inspiration not only to those who were receiving treatment but also to the staff members. Johnson explained that he had been given a second chance at recovery for his addictions and requested that Haley also be given a second chance by being allowed to receive treatment at the True Purpose Recover Center. The letter from Connie Shaffer, the manager of the thift store at New Hope, stated that she personally observed Haley during his work at the thift store and believed that he had great potential to be a productive member of society. She stated that Haley was deserving of rehabilitation.

The parties stipulated that the charges of public intoxication and evading arrest on foot in Knoxville were dismissed. The presentence report, which was admitted as an exhibit, showed that Haley had been convicted of six felonies in Tennessee, numerous misdemeanors in Tennessee and Texas, and had two juvenile adjudications that would have been felonies had Haley committed them as an adult.

Heath Haley, the Defendant-Appellant's older brother, testified that the sentencing hearing was a "watershed moment" for his brother. Heath[1] said that his brother was ten years younger than him and was born the year their parents divorced. He said the divorce negatively impacted his brother because he did not have a father figure. Heath stated that he believed his brother had changed during his rehabilitation at New Hope. He also said that he would not have testified on his brother's behalf a year ago because his brother had not yet reached his low point. Heath stated that although he did not believe that his brother should be released into society, he did believe that his brother could be successful in a "supervised environment."

Amanda Speer, Haley's cousin, testified that her family had a "severe . . . infestation of alcoholism." She stated that she had been to jail three times and turned her life around in a rehabilitation program that she attended voluntarily. However, she acknowledged that she had never faced a sixteen-year sentence like the one Haley was facing in this case. Speer said that she had always been concerned about Haley because he grew up without a father figure. She believed that someone needed to provide Haley with the "tools" to help himself and that Haley was ready to start the road to recovery.

Sue Barker, who met Haley when she was a New Hope volunteer, testified that she considered Haley a friend. She described Haley as "sweet" but said that he had "some demons in him that absolutely wouldn't let him make the right choices." She believed Haley was capable of being a leader and had "the potential to be anything he want[ed] to be[.]"

---

[1]We have referred to Heath Haley by his first name because he and the Defendant-Appellant share the same last name.

Barker said that there had been a lot of "confusion" during Haley's treatment when New Hope changed over to Mercy House and when Jeremy Graham and his counselor Matthew Johnson left New Hope. She said she was "in shock" when she discovered that Haley had been expelled from New Hope. Barker stated that Haley and Matthew Johnson formed a strong bond during Haley's treatment at New Hope.

Carlene Herndon, Haley's step-mother, testified that she married Haley's father when Haley was five years old. She believed that Haley had been "lost" for nearly ten years but that she had been able to meet with him recently and believed he was committed to seeking treatment. Herndon said that Haley had developed a deep relationship with the Lord, had accepted responsibility for his actions, and wanted to "get help and get better." She asked that the court allow Haley to attend a supervised rehabilitation center that had counseling.

Martha Haley Perez, Haley's mother, testified that following her divorce, she and Haley moved to Houston, where Haley began using drugs and became "[o]verwhelmed with his alcohol use." She said that during one of the incidents in Davidson County, Haley had an accident while driving drunk and spent two days in the hospital. In March 2009, Haley finally agreed to receive treatment at New Hope. Perez stated that her son had matured during his time in jail and had become more open and less defensive. She also believed that Haley had the right mind-set to complete the rehabilitation program with which Jeremy Graham was associated if the court allowed him to do so.

Haley, age twenty-eight, testified that he committed his first crime of public intoxication when he was twelve years old because he had wanted to be friends with the "cool" kids. He said he drank alcohol and smoked marijuana for the first time at age twelve and used cocaine for the first time at age fifteen. Haley said it was difficult growing up because he did not have a father figure. He said he met his biological father for the first time when he was approximately seven years old. Haley acknowledged that his family loved and supported him and that he had financial support from them; however, he denied having a "decent life."

Haley acknowledged that he had been arrested six times for DUI and that he had endangered people's lives when he had driven while under the influence of alcohol and drugs. He admitted that his criminal record made him look like he was a dangerous individual.

Haley said that when he was twenty-one, he got a job selling cars. He claimed that many salesmen used cocaine because it was a "long job" that often required them to work twelve hours a day. At the time, Haley thought that using cocaine was "cool[,]" even though it was a crime.

Regarding the December 14, 2007 incident, Haley said that he refused to stop his vehicle at the sight of the officer's emergency lights because there was no place to pull over on the road. He continued to drive for two or three minutes until he reached his place of work. Consequently, Haley acknowledged that once he was stopped, the officer found alcohol, scales, and "a little bit [sic] of drugs in the car." The officer informed him that he had been driving in violation of the MVHOA, although Haley claimed that he was not aware of this fact at the time. Haley said he told the officer about the drugs in his car and later admitted to jail personnel that he had drugs on his person.

Haley said he had the scales in his car to weigh the cocaine he purchased in order to avoid being cheated, and he admitted that baggies were found in his car. Haley also admitted that he sold marijuana and cocaine in order to support his habit for approximately a year. Prior to his arrest, he sold drugs to four or five people regularly and eight or nine people less frequently. He said he was "high" and "drunk" on December 14, 2007, when the officer stopped him.

Haley said that in Davidson County he was charged with DUI, fifth offense, which was reduced to DUI, fourth offense, and car theft. He stated that the day of his arrest he had been drinking and partying with some friends who had wanted him to purchase some cocaine. He obtained the cocaine, and as he was driving back to the party, an officer attempted to stop him. He began driving between eighty and one hundred miles per hour and hit a bump in the road, which launched the car into the air, causing him to lose control and hit a brick wall. Because Haley had not been wearing his seat belt, he received serious injuries and was taken to Vanderbilt Hospital. He was charged with theft of the convertible he was driving because he did not have the owner's permission to drive the vehicle. Haley claimed that another friend at the party had told him to drive the convertible because the owner was too drunk to drive. The owner later told Haley that he would have to "take the [theft] charge" or the owner would not receive any money from his automobile insurance for the damage to the car. Pursuant to his plea agreement on the Davidson County charges, Haley served seven months in confinement before being placed on probation for three years. During his time in the Davidson County jail, Haley participated in group sessions for the New Avenues rehabilitation program. Haley acknowledged that the court later gave him a furlough for his Sumner County charges, which enabled him to attend the New Hope rehabilitation center. He acknowledged that if he had not chosen to attend New Hope, he would have been required to spend two years in the Sumner County jail.

Haley said that he did not believe that he needed any help for his addictions when he first began treatment at New Hope. However, once he got there, he "sat [in] church" and "cried for about 30 days to God." Haley said he finally acknowledged that he needed to work through some issues when he began receiving "some real counseling" for his addictions.

Haley said that he had received treatment at New Hope for approximately five or six months when he received his second weekend pass. That particular weekend, Haley admitted that he drank alcohol and was arrested for public intoxication and evading arrest on foot in Knoxville, even though these charges were ultimately dismissed. Approximately three weeks later, the new executive director at New Hope told him that he was expelled from the program because of the Knoxville criminal charges. Although Haley knew that he was supposed to return to jail at that point, he did not do so. Instead, Haley completed another rehabilitation program that lasted ninety days. He admitted that both his attorney and the assistant district attorney had told him to return to jail, but he refused. After completing the ninety-day rehabilitation program, Haley stayed with his father for four days until he was arrested.

Haley informed the trial court that for the first time in his life he wanted to change. He admitted that he had been selfish and narcissistic and had never dealt with the "root issues" of his addiction problems in the past. He acknowledged that he was lucky that he had not killed anyone during his criminal offenses. Haley said that his "spirit" had changed, although he acknowledged that he had an internal "spiritual warfare" that consisted of the good side of him wanting to do the right thing and the bad side of him wanting to do the wrong thing. Haley said that although he did not want to go to prison, he recognized that he had to be held accountable for his actions. He also said, "I want to be a success in life because I know that I can. I've been a productive citizen of society. I've had careers. I just didn't care about them. So that's why I'm here." He apologized "for being a menace to society" and for his criminal offenses. He admitted that he had made several bad decisions and that for the first time in his life he was trying to change.

On cross-examination, Haley admitted that he had attended rehabilitations programs for approximately one year prior to his expulsion from New Hope. He also admitted that he had received probation several times for his prior convictions. Finally, he admitted that he knew he was supposed to return to jail after his expulsion from New Hope and after his completion of the second ninety-day rehabilitation program but failed to do so.

As a Range I, standard offender, Haley was subject to a sentence of one to two years for his convictions for violating the MVHOA conviction and evading arrest, Class E felonies. Id. § 40-35-112(a)(5) (2006). He was also subject to a sentence of eight to twelve years for his conviction for possession of .5 grams or more of a Schedule II drug with the intent to sell or deliver, a Class B felony. Id. § 40-35-112(a)(2) (2006). In addition, as a Range II, multiple offender, Haley was subject to a sentence of two to four years for his conviction for failure to appear, a Class E felony. Id. § 40-35-112(b)(5) (2006). The trial court sentenced Haley to concurrent sentences of two years for violating the MVHOA conviction, two years for the evading arrest conviction, and ten years for the possession of .5 grams or more of a

Schedule II drug with the intent to sell or deliver. The court also sentenced Haley as a Range II, multiple offender to a consecutive sentence of four years for the felony failure to appear conviction, for an effective sentence of fourteen years in the Tennessee Department of Correction. Haley subsequently filed a timely notice of appeal.

## ANALYSIS

This case is governed by the 2005 amended sentencing act because Haley committed all four of the offenses in this case after the new sentencing act's effective date of June 7, 2005. See T.C.A. § 40-35-210 (2006), Compiler's Notes. Under the amended sentencing act, "the trial court 'shall consider, but is not bound by' an 'advisory sentencing guideline' that suggests an adjustment to the defendant's sentence upon the presence or absence of mitigating and enhancement factors." State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2008) (quoting T.C.A. § 40-35-210(c) (2006)). Moreover, under the new law "[a]n appellate court is . . . bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346. The Tennessee Supreme Court emphasized the broad discretion the trial court has in sentencing a defendant under this act:

> [A] trial court's weighing of various mitigating and enhancement factors has been left to the trial court's sound discretion. Since the Sentencing Act has been revised to render these factors merely advisory, that discretion has been broadened. Thus, even if a trial court recognizes and enunciates several applicable enhancement factors, it does not abuse its discretion if it does not increase the sentence beyond the minimum on the basis of those factors. Similarly, if the trial court recognizes and enunciates several applicable mitigating factors, it does not abuse its discretion if it does not reduce the sentence from the maximum on the basis of those factors. The appellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence.

Id. at 345-46.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). This means that if the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, this court "may not disturb the sentence even if we would

-9-

have preferred a different result." State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, in a case where "the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." Carter, 254 S.W.3d at 345 (citing State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). Because the trial court properly considered the purposes and principles of the sentencing act, our review is de novo with a presumption of correctness. See id. at 345-46; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

A trial court, when sentencing a defendant, must consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b); see Carter, 254 S.W.3d at 343; State v. Hayes, 337 S.W.3d 235, 264 (Tenn. Crim. App. 2010). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." T.C.A. § 40-35-103(5) (2006). The defendant has the burden of showing the impropriety of the sentence. See T.C.A. § 40-35-401(d), Sentencing Comm'n Comments.

**Mitigating Factors.** Haley first argues that the trial court erred in failing to consider any mitigating factors and erred in failing to make adequate findings on the record regarding the mitigating factors. In response, the State argues that the trial court considered the mitigating factors before choosing not to apply them, which was warranted because the proof showed only that Haley had "a change of heart" during his time in confinement prior to the sentencing hearing. Moreover, the State notes that Haley failed to identify the specific

mitigating factors the court should have applied and failed to argue that the trial court erred in applying the two enhancement factors, including the factor regarding Haley's lengthy criminal history, which alone provided a sufficient basis for the trial court to sentence him to the maximum sentence in the range for each offense. See State v. Lawrence Hailey, No. W2009-00759-CCA-R3-CD, 2010 WL 2219574, at *11 (Tenn. Crim. App., at Jackson, May 24, 2010) (holding that the enhancement factor regarding a defendant's criminal history is sufficient "to enhance a sentence to the maximum and 'firmly embed' it in the ceiling" (citations omitted)). We conclude that the record supports the trial court's sentence.

The record shows that although a significant amount of mitigating proof was presented at sentencing, defense counsel did not ask that any specific mitigating factors be applied by the trial court. See T.C.A. § 40-35-113 (2006). However, the defendant is not required to request that certain mitigating factors be considered by the trial court during the sentencing hearing. See id. § 40-35-210(e) (providing that the trial court is required to state what mitigating factors, if any, it considered in arriving at the sentence). Here, defense counsel generally requested leniency in sentencing and specifically requested that the trial court impose a sentence of split confinement.

After hearing arguments from the attorneys, the trial court applied to all four convictions the enhancement factor that the defendant had "a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]" T.C.A. § 40-35-114(1) (2006). In addition, for the convictions for violating the MVHOA, evading arrest, and possession of .5 grams or more of a Schedule II drug with the intent to sell or deliver, the court applied the enhancement factor that the "defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community[.]" The court explained that Haley violated the terms of his release on the Davidson County convictions and violated the terms of his bail in Sumner County as well as the Sumner County Criminal Court's furlough order by committing these offenses. Id. § 40-35-114(8) (2006). Finally, for the felony failure to appear conviction that Haley committed while released pursuant to the court's furlough order, the court applied the enhancement factor that the defendant was on a "form of judicially ordered release" at the time he committed the felony. Id. § 40-35-114(13)(F) (2006).

Regarding the mitigating factors, the court stated the following:

I'm really not impressed with any mitigating factors . . . as stated in [the] statute and in the Carter case that I've cited recently from our Supreme Court. They talk about these enhancing and mitigating factors, and the Supreme Court stated that the trial court is free to select any sentence within

-11-

the applicable range so long as the length of the sentence is consistent with the purpose and principles of the sentencing act.

The record shows that although the trial court determined that no mitigating factors were applicable after considering the mitigating proof, it failed to state what mitigating factors, if any, it considered. See T.C.A. § 40-35-210(e) ("When the court imposes a sentence, it shall place on the record, either orally or in writing, what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing."). Although the trial court erred in failing to state what mitigating factors, if any, it considered, we conclude that the evidence supports the sentence imposed.

Moreover, we agree with the State that the trial court was free to sentence Haley to the maximum sentence in each range based solely on the enhancement factor regarding his lengthy criminal history. See Lawrence Hailey, 2010 WL 2219574, at *11; see also State v. Samuel D. Braden, No. 01C01-9610-CC-00457, 1998 WL 85285, at *7 (Tenn. Crim. App., at Nashville, Feb. 18, 1998); State v. James Taylor, Jr., No. W2006-02085-CCA-R3-CD, 2007 WL 3391433, at *6 (Tenn. Crim. App., at Jackson, Nov. 14, 2007); State v. Barry Singleton, No. W2006-02476-CCA-R3-CD, 2009 WL 1161782, at *7 (Tenn. Crim. App., at Jackson, Apr. 29, 2009). Accordingly, Haley is not entitled to relief on this issue.

**Alternative Sentence.** Haley also argues that the trial court erred in denying him an alternative sentence. Specifically, he claims that the trial court disregarded the proof he offered establishing his suitability for probation. He also generally claims that the trial court "did not properly weigh the factors in considering whether the appellant should receive probation or split confinement." Finally, he asserts that the trial court improperly relied on a need for deterrence in denying alternative sentencing, even though there was no proof in the record regarding a need for deterrence for these types of offenses. In response, the State argues that the trial court properly denied an alternative sentence after finding that Haley had a long history of criminal conduct and that measures less restrictive than confinement had recently been unsuccessfully applied to him. We agree with the State.

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) (2006) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D, or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). T.C.A. § 40-35-102(6)(D) (2006).

We note that Haley was considered a favorable candidate for alternative sentencing for his three Class E felonies, though he was not considered a favorable candidate for alternative sentencing for his Class B felony. In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court must consider if:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C) (2006); see Ashby, 823 S.W.2d at 169.

The trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). When a defendant is considered a favorable candidate for alternative sentencing, the State has the burden of presenting evidence to the contrary. See State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, the defendant has the burden of establishing suitability for full probation, even if the defendant is considered a favorable candidate for alternative sentencing. See id. (citing T.C.A. § 40-35-303(b)).

We also note that Haley was also eligible for probation because the sentence imposed in each of his four convictions was ten years or less and the offense for which he was sentenced was not specifically excluded by statute. T.C.A. § 40-35-303(a) (2006); see State v. Langston, 708 S.W.2d 830, 832-33 (Tenn. 1986) (concluding that a defendant with an effective sentence in excess of ten years is nonetheless eligible for probation if the individual sentences imposed for each conviction are ten years or less). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b) (2006). In addition, "the defendant is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b), Sentencing Comm'n Comments. Rather, the defendant must demonstrate that probation would serve "the ends of justice and the best interests of

both the public and the defendant." State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted).

When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, his present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). In addition, the principles of sentencing require the sentence to be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. § 40-35-103(2), (4) (2006). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed[,]" and "[t]he length of a term of probation may reflect the length of a treatment or rehabilitation program in which participation is a condition of the sentence[.]" Id. § 40-35-103(5).

Here, the trial court found that Haley had "a long history of criminal conduct" pursuant to code section 40-35-103(1)(A). In reviewing Haley's criminal history, which included six felonies and numerous misdemeanors, the trial court remarked, "This is one of the longest [criminal histories that] I've ever seen." The court then reiterated that Haley had begun drinking alcohol at age ten, first smoked marijuana at age twelve, and first used cocaine at age fifteen. Because of Haley's extensive drug use, the court noted that he was "violating the law almost every day."

Regarding code section 40-35-103(1)(B) that "[c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses[,]" the court made the following statement: "I can't tell you how great the deterrent effect is on cocaine. I can't tell you how great the deterrent effect is on going out on a furlough and then [getting drunk and getting arrested] and then not showing up for court."

Finally, regarding code section 40-35-103(1)(C), the court found that "[m]easures less restrictive than confinement ha[d] frequently or recently been applied unsuccessfully to the defendant[.]" The trial court emphasized that it had initially given Haley a furlough to seek rehabilitative treatment at New Hope for three of the offenses in this case. Despite this opportunity, Haley got drunk, got arrested, violated his furlough, and then failed to turn himself into the authorities. The court noted that during this time, Haley checked himself into a rehabilitation facility without court approval, missed his sentencing hearing, and was ultimately arrested. The court also noted that Haley had "been on probation numerous times

before." Finally, the trial court declined to impose an alternative sentence, stating, "I find absolutely no reason, absolutely no reason for probation. I find absolutely no reason for split-confinement."

The record fully supports the trial court's denial of alternative sentencing in this case. The trial court properly relied on code sections 40-35-103(1)(A) and (C) in imposing a sentence of confinement. Moreover, based on our reading of the record, the court did not improperly rely on a need for deterrence in sentencing Haley to confinement. The record shows that the court considered Haley's proof regarding probation before determining that a sentence of confinement was proper. Accordingly, we conclude that Haley's effective sentence of fourteen years in the Tennessee Department of Correction is proper. The judgments of the trial court are affirmed.

## CONCLUSION

The trial court did not err in sentencing Haley to an effective sentence of fourteen years in confinement. Accordingly, the trial court's judgments are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE